**Application of Anderson D. WHITE and Allen E. Wisler.**

**Patent Appeal No. 8897.**

United States Court of Customs and Patent Appeals.

May 24, 1973.

through rock. Such a bit is shown in appellants' figure 1:

**FIGURE 1**

Robert A. Felsman, Fort Worth, Tex., attorney of record, for appellants. Donald L. Dennison, Dennison, Dennison, Townshend & Meserole, Arlington, Va., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred W. Sherling, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

BALDWIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals sustaining the rejection of claims 1–3 and 5–20 of appellants' application.[1] The application additionally contains claim 4, which was allowed by the examiner.

*The Invention*

The invention concerns hardfacing material which is useful in prolonging the life of the gage surfaces of rolling cutters of drill bits used in drilling

The gage surfaces 15 are those surfaces which contact the sidewall of a drill hole as the cutters 11 roll over the bottom of the hole. The gage surfaces are cutting surfaces, whose function is to maintain the full gage of the borehole. Appellants' specification states:

The importance of such gage-maintaining function in an oilwell can scarcely be exaggerated. Since all subsequent operations such as running in casing and cementing it in place depend on having a full gage hole, the customer demands and obtains it in one way or another. If a bit drills an undersize hole, the following bit must be used to ream the hole to full gage, even if in so doing the second bit becomes useless for further drilling. Needless to say, the bit which drilled the undersize hole will not be reordered if a better one is available.

Appellants further point out that the wear-resistance of the gage surfaces is more important than that of the sur-

[1]. Serial No. 730,671, filed April 18, 1968, which is a continuation-in-part of Application Serial No. 515,603, filed December 22, 1965.

faces of the bottom-cutting structure. Gradual wearing away of the bottom-cutting structure can be tolerated, as long as that structure continues to cut for an economical length of time. However, if any wear is allowed to take place on the gage surfaces, the diameter of the borehole will become smaller.

Tungsten carbide has been used as hardfacing for many drilling tools since as early as 1927 or 1928. Concerning that material, appellants' specification states:

> Broadly speaking, however, there are two basically different types of tungsten carbide, the cast carbide and the sintered or cemented carbide. Cast tungsten carbide is essentially a eutectic of the monotungsten carbide and the ditungsten carbide, WC and $W_2C$, while sintered carbide in the past has been essentially pure WC. In the cast carbide, there is no additional material holding the grains of a granule together, while in sintered tungsten carbide granules each grain is surrounded by an iron group binder, such binder being a continuous phase which binds or cements the grains together. The usual binder has been cobalt, and it is usually added to form 3 to 15 percent of the total weight of the granule.

> The cast carbide is actually the harder and more abrasive of the two, and when it can stand the impacts to which it is subject without undue crumbling it will protect against wear better than the sintered material. On the other hand, sintered carbide is tougher than cast carbide, and will withstand repeated impacts with less breakage and crumbling. For this reason sintered tungsten carbide is preferred for such shapes as inlays of massive carbide for drag bit teeth and inserts or compacts forming the cutting structure of "button" bits.

Appellants' invention is to use as hardfacing the sintered tungsten carbide granules, bound to the tool by a matrix of alloy steel, preferably with some of the steel matrix being obtained from the tool itself. Patentability is argued for three aspects of appellants' hardfacing material—the use of appellants' alloy steel matrix to hold the hardfacing granules on the gage surface; the use of sintered tungsten carbide which contains both ditungsten carbide and monotungsten carbide; and the use of a binder material, for binding the tungsten carbide in the pellets, which includes an iron group metal other than cobalt. Claims 2, 16 and 18 are representative of the claims drawn to the various aspects of the invention:

> 2. An improved gage hardfacing on a rolling cone cutter of a rock bit consisting of granules of sintered tungsten carbide in an alloy steel matrix.

> 16. An improved hardfacing for cutting tools and abrasion resistant tools in general, said hardfacing comprising sintered tungsten carbide granules in an alloy steel matrix, said granules comprising grains of tungsten carbide cemented together with a binder consisting of at least two metals of the iron group.

> 18. An improved hardfacing for cutting tools and abrasion resistant tools in general, said hardfacing comprising granules of sintered tungsten carbide granules in an alloy steel matrix, said granules comprising a mixture of monotungsten carbide and ditungsten carbide.

Claims 1–3 and 6 deal with the sintered tungsten carbide and the stainless steel alloy matrix without recitations concerning the type of binder used or whether ditungsten carbide is present. Claim 5 and 18–20 require the sintered tungsten carbide to be a mixture of ditungsten carbide and monotungsten carbide. Claims 6–17, 19 and 20 contain restrictions on the binder used. In the view we take of the case it is unnecessary to deal separately with the various types of claims.

### The References

The examiner rejected claims 1–3 under 35 U.S.C. § 103 as unpatentable over

Payne[2] in view of Rowley et al. (Rowley).[3] Claims 5–20 were rejected under section 103 as unpatentable over Payne in view of Rowley and Owen.[4]

Payne deals with improved gage cutting structure for earth boring drills. particularly for rolling cone cutters of the type dealt with by appellants. Payne states that, in order to overcome the lack of abrasion resistance of the cutter bodies:

> [I]t has been proposed to superpose a layer of wear resistant metal upon the outer ends of the heel teeth and the adjacent metal of the cutter[,] such layer comprising a carbide, such as particles of tungsten carbide, secured in place by a matrix of suitable metal such as mild steel applied by a torch so that the matrix metal wets the surface of the base metal of the cutter and the carbides thus providing an effective interbond to hold the particles in place to serve their intended purpose.

Payne's invention was to reinforce the hardfacing material by providing annular steel ridges between areas having hardfacing which was applied in the manner quoted above.

Rowley discloses improving the abrasion resistance of the gage surfaces of drill bits by using hardfacing. A drag type bit (not a rolling bit like appellants') is provided with chips or particles of tungsten carbide or other material bonded to the gage surface by a matrix. Rowley states that the "chips or particles are preferably sintered tungsten carbide but other hard abrasion-resistant alloys may be employed." Concerning the matrix, Rowley states:

> The matrix employed to bond the chips or particles 18 to the steel blades is composed of one or more metals which melt below about 2,500°F. and have the property of wetting both the steel and the carbide or other particles. Suitable matrix

materials include copper, copper-nickel alloys containing up to about 60 percent nickel, copper-beryllium alloys containing up to about 3 percent beryllium, copper-cadmium alloys containing up to about 18 percent cadmium, and the like.

Owen is essentially similar to Rowley, and was relied on for additional disclosure concerning mixtures of monotungsten carbide and ditungsten carbide which it is unnecessary to detail here. Owen states the following with regard to the matrix material employed with his sintered tungsten carbide:

> It is desirable in mounting the cutting elements * * * that the temperature be maintained below the melting point of the binder in order to avoid injurious grain growth of the carbide grains and/or injurious dilution of the cementing material with the matrix. Thus it is preferred to select a matrix 5 which has a melting point in a range from about 1600°F. to 2450°F. and therefore comfortably below the melting point of the binder 7 (2728°F. for cobalt).

### The Rejection

The examiner considered that it would have been obvious to use sintered tungsten carbide as the hardfacing material in the steel matrix of Payne, in view of Rowley's preference for it.

The examiner took this position despite the record of the parent of the present application, which contained, inter alia, an affidavit by patentee Payne to the effect that the gage surface of rolling cone cutters "is so altogether different in its manner of operating from other components of downhole drilling tools * * * that no person of average * * * skill in the art can apply the teachings of such [other] tools and components to the rolling cone gage surface," and that while his patent did not specify which type of tungsten

2. U. S. Patent No. 2,939,684, issued June 7, 1960.

3. U. S. Patent No. 3,120,285, issued February 4, 1964.

4. U. S. Patent No. 2,833,520, issued May 6, 1958.

carbide to be used on rolling cone gage surfaces, "the workable tungsten carbide known to me at that time were limited to the cast tungsten carbides * * *," which are what had been used on those devices ever since about 1929.

In the present application, after the examiner filed his answer, appellant introduced an affidavit by one Davidson, to the effect that appellants' company had, through error, hardfaced a large number of *drag* bits with the same sintered tungsten carbide which had given excellent results on roller cutting bits, and that those drag bits became worn very quickly, the point being that this bolstered appellants' position that a teaching that a material was good on one type of bit was not necessarily a teaching that it would be good on the other. In spite of the Davidson affidavit the examiner maintained his position.

The board generally agreed with the examiner's position, although it additionally relied on a patent to Beeghly [5] with regard to certain of the claims. In response to an argument that those skilled in the art would have considered the melting points of sintered tungsten carbide and alloy steel to be too close to allow alloy steel to be used as a matrix, the board stated:

> Owen states that "it is preferred to select a matrix 5 which has a melting point in a range from about 1600°F. to 2450°F. and therefore comfortably below the melting point of the binder 7 (2728°F. for cobalt)." This is merely a statement of preference and not one of criticality. Steel alloys melt in the vicinity of 2700°F. There is no evidence that one ordinarily skilled in the art would have considered it impossible to use Payne low carbon steel welding tubes with the ferromanganese and ferromolybdenum powders to create a matrix without excessively melting the binder or the sintered tungsten carbide of the granules. Assuming *arguendo,* that appellants are correct in contending that

drag bit technology and roller cutter technology are materially different, that fact would lead one ordinarily skilled in the art to use the alloy steel matrix of Payne rather than the matrices of the other references in incorporating sintered carbides into roller cutters. We have carefully considered the affidavits in both the parent applications and in the instant application and are not persuaded thereby that in view of the admitted prior art and the documentary prior art, to one ordinarily skilled in the art there would be anything unobvious in substituting sintered tungsten carbide for the cast carbide of the prior Payne roller cutters.

### Opinion

Concerning the Payne patent, the board stated:

> The Payne patent (owned by appellants' assignee) discloses a rolling cutter equipped with wear resistant faces consisting of *cast* tungsten carbide particles embedded in a matrix of "mold steel or a suitable alloy."

Thus the board apparently accepted the Payne affidavit as sufficient to show that the disclosure of the Payne patent was limited to *cast* tungsten carbide and rolling cutters. While the solicitor argues that it is not so limited, our task is not to resolve any differences of opinion between the solicitor and the board, but rather to rule on the correctness of the rejection as the board presented it to the applicants.

Following the board's interpretation of the Payne patent, we are of the opinion that the rejection before us must be reversed. The question is not whether there is "evidence that one ordinarily skilled in the art would have considered it *impossible* to use the Payne low carbon steel welding tubes with the ferromanganese and ferromolybdenum powders to create. a matrix without excessively melting the binder or the sintered tungsten carbide of the granules [emphasis added]." The question is wheth-

5. U. S. Patent No. 3,165,822, issued January 19, 1965.

er it would have been obvious for one ordinarily skilled in the art to make the proposed combination of the sintered tungsten carbide with the steel matrix. We find the disclosure in Owen to be pretty solid evidence that one ordinarily skilled in the art would expect the binder for the sintered tungsten carbide to be adversely affected by the temperatures necessary to utilize the steel matrix of Payne. While the precise melting point given by the board for steel (2700°F.) is slightly lower than the melting point given by Owen for his binder (2728°F.) Owen uses matrix materials which are more than 200 degrees "comfortably below" the binder melting point. Likewise, Rowley uses a matrix which is "composed of one or more metals which melt below about 2,500°F. * * *," again well below the binder melting point. Thus both of these references effectively teach against the use of high melting materials, such as steel, for the matrix material for sintered tungsten carbide, and we conclude that such use would not have been obvious to one of ordinary skill in the art.

The decision of the board is reversed.

Reversed.